# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA JACKSONVILLE DIVISION

| | |
|---|---|
| VIVIENNE BEUTELSCHIESS, RONDA DEGROFT, and BRITTNEY RESPESS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GATE PETROLEUM COMPANY,<br><br>        Defendant. | Case No. |

## <u>DEFENDANT'S NOTICE OF REMOVAL</u>

Defendant Gate Petroleum Company ("Defendant"), files this Notice of Removal, in accordance with 28 U.S.C. §§ 1441, 1446, and 1453, to remove this action filed by Plaintiffs Vivienne Beutelschiess, Ronda DeGroft, and Brittney Respess ("Plaintiffs") from the Circuit Court for the Fourth Judicial Circuit in and for Duval County, Florida, Case No. 16-2023-CA-009283-XXXX-MA, Div: CV-C, to the United States District Court for the Middle District of Florida, Jacksonville Division.  In support of removal, Defendant states as follows:

## NATURE OF REMOVED ACTION

1.     On June 23, 2023, Plaintiffs filed their Class Action Complaint against Defendant (the "Circuit Court Action").  A true and correct copy of the Class Action Complaint ("Complaint") in the Circuit Court Action is appended hereto as **Exhibit A**.

2.     Plaintiffs allege that they bring "this class action against Defendant for its failure to properly secure and safeguard personal identifiable information ('PII') of more than 12,000 individuals, including Defendant's current and former employees, including, but not limited to, name and Social Security number." (Ex. A ¶ 1 (footnote omitted).)  Plaintiffs allege that "[o]n or before September 21, 2022, Defendant learned of a data breach on its network that occurred from September 20, 2022 to September 22, 2022 (the 'Data [Incident]')."  (*Id.* ¶ 5.)  Plaintiffs allege that they received notice of the Data Incident dated November 9, 2022. (*Id.* ¶¶ 69, 77, 85.)

3.     Plaintiffs seek to certify a class of "'[a]ll individuals whose PII was accessed in the data incident that is the subject of the Notice of Data Breach that Defendant sent to Plaintiffs and Class Members on or around November 9, 2022 (the 'Nationwide Class')."  (*Id.* ¶ 94.)  Alternatively, Plaintiffs seek to certify a subclass of "[a]ll individuals who were employed by Defendant on or before September 21, 2022, and whose PII was accessed in the data incident that is the subject of the Notice of Data Breach that Defendant sent to

2

Plaintiffs and Class Members on or around November 9, 2022 (the 'Employee Subclass')[.]" (*Id.* ¶ 95.)

4.    Plaintiffs purport to bring this suit because Defendant "intentionally, willfully, recklessly, or negligently fail[ed] to take and implement adequate and reasonable measures to ensure that the PII of Plaintiffs and Class Members was safeguarded, [and] fail[ed] to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use." (*Id.* ¶ 15.)

5.    Plaintiffs allege that, as a result of the Data Incident, they have suffered "imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from" their PII being allegedly taken, and that this harm is "long lasting and severe" and "may continue for years." (*Id.* ¶¶ 57, 75, 83, 91.)  They allege that Plaintiffs and the putative class members have suffered "lost time, annoyance, interference, and inconvenience" and may potentially incur out-of-pocket expenses associated with prevention and detection of harm as a result of the Data Incident.  (*Id.* ¶¶ 74, 82, 90, 134.)  Plaintiffs allege that they "lost the opportunity of how their PII is used" and suffered "lost opportunity costs associated with effort expended and the loss of productivity" dealing with the Data Incident.  (*Id.* ¶ 134.)  They also allege injury costs associated with placing freezes on credit

reports and future costs for time, effort, and money expended to prevent, detect, contest and repair the impact of the alleged compromise.  (*Id.*)

6.      To redress these purported harms, Plaintiffs assert claims against Defendant for negligence and breach of implied contract. (*Id.* ¶¶ 110-145.) Plaintiffs seek damages and injunctive relief, including credit monitoring and requiring Defendant to implement various security changes.  (*Id.* ¶¶ 15, 99, 108, *Prayer for Relief.*)

7.      A true and correct copy of the docket sheet for the Circuit Court Action is attached hereto as **Exhibit B**.

8.      In accordance with 28 U.S.C. § 1446(a) and Local Rule 1.06(b), all process, pleadings, and orders that have been filed and served in the Circuit Court Action are attached to this Notice as Exhibits A-C.

## TIMELINESS OF REMOVAL

9.      Defendant was served with the Summons and Complaint on July 28, 2023.  A true and correct copy of the filed Return of Service is attached hereto with Exhibit C.  A true and correct copy of the proof of service showing service on July 28, 2023 is attached hereto with Exhibit C.

10.      This removal is timely because Defendant filed this removal within 30 days of being served with the Complaint.  *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when defendant is served).

## PROPRIETY OF VENUE

11.    This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

## GROUNDS FOR REMOVAL

12.    This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1441.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

13.    **Basis of Original Jurisdiction**.    This Court has original jurisdiction over this action under CAFA, codified at 28 U.S.C. § 1332(d). "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 924-25 (11th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)).

14.    Unlike traditional diversity jurisdiction, there is no presumption against removal under CAFA.  *Id.; see also Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014) (holding that "[a]pplying this binding precedent from

5

the Supreme Court [in *Dart Cherokee*], we may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions"). In deciding whether removal is proper, "a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *Anderson*, 943 F.3d at 924-25.

15.     Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, and any member of the putative class is a citizen of a different state than that of the defendant.  28 U.S.C. § 1332(d)(1)-(2)(A); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

16.     As set forth below, under 28 U.S.C. § 1332(d) and § 1441(a), Defendant may remove the Circuit Court Action to federal court under CAFA because: (1) this action is pled as a nationwide class action; (2) the putative nationwide class includes more than 100 members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different than that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, exclusive of interests and costs.  *See Lowery*, 483 F.3d at 1194.

17.     **<u>This Action Is Pled as a Class Action.</u>**  CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rule of Civil

6

Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" 28 U.S.C. § 1332(d)(1).

18.     Plaintiffs bring this action as a "class action" and seek class certification under Florida law pursuant to Florida Rules of Civil Procedure 1.220(b)(2), (b)(3), and (d)(4).  (Ex. A ¶ 93.)  Because Florida Rule 1.220 is a "similar State statute . . . authorizing an action be brought by 1 or more representative as a class action," the first CAFA element is satisfied.  28 U.S.C. § 1332(d)(1); *see Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("Florida Rule of Civil Procedure 1.220 is patterned after Federal Rule of Civil Procedure 23."); *accord Rollins, Inc. v. Butland*, 951 So. 2d 860, 879 (Fla. Dist. Ct. App. 2006) (explaining that "federal cases are persuasive authority for the interpretation of rule 1.220" because it is similar to Federal Rule 23).

19.     **The Putative Class Includes At Least 100 Members.** Plaintiffs purport to bring this action on behalf of themselves and all others similarly situated, including "All individuals whose PII was accessed in the data incident that is the subject of the Notice of Data Breach that Defendant sent to Plaintiffs and Class Members on or around November 9, 2022 (the 'Nationwide Class')."  (Ex. A ¶ 94.)

20.    Plaintiffs assert that "Defendant reported to the Maine attorney general that 12,044 individuals were impacted in the Data [Incident], and the Classes are apparently identifiable within Defendant's records." (*Id.* ¶ 98.)

21.    Thus, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

22.    **"Minimal Diversity" of Citizenship Exists.**  Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." *See also Dart*, 574 U.S. at 84-85.

23.    Defendant's Citizenship.  As alleged in the Complaint, Defendant is a Florida corporation with its principal place of business in Jacksonville, Florida, and therefore is a Florida citizen for diversity purposes. (*See* Ex. A ¶ 19.)  Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."

24.    Plaintiffs' and Putative Class Members' Citizenship.  To be a "citizen" of a state, the individual must not only reside in that state, but he or she also must "inten[d] to remain in that state." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157 (11th Cir. 2021).  In other words, "[o]ne's domicile is 'the place of his true, fixed and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent

8

therefrom.'" *Id.* at 1149 (citation omitted). "Courts look to various factors in determining a person's intent to remain in a state, including: the location of real and personal property, business ownership, employment records, the location of bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and sworn statements of intent." *Id.* (citations omitted).

25.    Plaintiff Beutelschiess alleges that she is a citizen of Florida residing in St. Augustine, Florida.  (Ex. A. ¶ 16.)

26.    Plaintiff DeGroft alleges that she is a citizen of Florida residing in Lake Placid, Florida.  (*Id.* ¶ 17.)

27.    Plaintiff Respess alleges that she is a citizen of Michigan residing in Wyoming, Michigan.  (*Id.* ¶ 18.)

28.    As such, because Plaintiff Respess and Defendant are citizens of different states, minimal diversity is met.

29.     Further, the putative class Plaintiffs seek to represent is broad and expansive geographically.  After determining whose information could have potentially been impacted by the Data Incident, Defendant mailed notifications of the Incident to individuals with addresses in 47 states and provided substitute notice by posting notification of the Incident on its website.

30.    While "residency does not equate to citizenship," *Smith*, 991 F.3d at 1157, in this case, where only one putative class member must reside and

intend to remain in a state different than Florida, it is more likely than not that at least one of the approximately 12,044 remaining putative class members is a non-Florida citizen. *See, e.g., Fuller v. Home Depot Servs., LLC*, No. CIV.A.1:07CV1268 RLV, 2007 WL 2345257, at *3 (N.D. Ga. Aug. 14, 2007) (nine putative class members with out-of-state driver's licenses and billing addresses was sufficient to show domicile outside of Georgia to satisfy minimal diversity under CAFA); *Brew v. Univ. Healthcare Sys., LC*, CV 15-4569, 2015 WL 8259583, at *3 (E.D. La. Dec. 9, 2015) (minimal diversity existed where members of the class definition had mailing addresses in seventeen different states).

31.    Accordingly, "minimal diversity" of citizenship exists for purposes of CAFA jurisdiction because Plaintiff Respess and members of the proposed class are citizens of a state different than the state of citizenship of Defendant.

32.    **The Amount in Controversy Exceeds the CAFA Threshold.**[1] CAFA requires that a complaint put in controversy more than $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the

---

[1] The amounts set forth in this Notice of Removal are solely for the purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended and cannot be construed as an admission that Plaintiffs can state a claim or are entitled to damages in any amount. Defendant denies liability, denies Plaintiffs are entitled to recover any amount, and denies that a class can be properly certified in this matter.

individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See id.* § 1332(d)(6).

33.   Moreover, in the Eleventh Circuit, "[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citation omitted). The court "aggregate[s] the claims of individual class members and consider[s] the monetary value that would flow to the entire class if … relief were granted." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (citing 28 U.S.C. § 1332(d)(6)).

34.   The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart*, 574 U.S. at 89; *accord Anderson*, 943 F.3d at 925. "[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 732 (11th Cir. 2014).

35.   Where a plaintiff does not plead a specific amount of damages, the removing defendant must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010).  In determining

11

whether the amount-in-controversy requirement is satisfied, the Court may consider various pieces of evidence, including "facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence." *Id.* at 754.

36.     "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka*, 608 F.3d at 751.  Indeed, as the Eleventh Circuit has recognized, "'the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'"  *Id.* (emphasis in original; citation omitted).

37.     Plaintiffs in this action bring claims on behalf of themselves and putative class members for negligence and breach of implied contract. (Ex. A ¶¶ 110-145.) They seek damages and injunctive relief, including credit monitoring because they allege that the offer of misuse detection and identity protection services currently offered through Experian® are "inadequate" to redress the "threats they face for years to come."  (*See id.* ¶¶ 15, 67, 99, 108, *Prayer for Relief*.)

38.     The Complaint does not specify the amount of damages Plaintiffs and the putative class members seek in this action.  But the pleaded allegations demonstrate that the putative class members' claims, in the

12

aggregate, exceed the sum or value of $5 million, exclusive of interest and costs. According to the Complaint, 12,044 individuals were affected by the Data Incident. (Ex. A ¶ 98.) If Plaintiff alleges more than $415.15 in damages for each putative class member, the jurisdictional amount-in-controversy is easily satisfied. And the allegations in the Complaint plainly meet this threshold.

39.    Plaintiffs allege that as a result of the Data Incident, they and 12,044 putative class members face a "lifetime risk" of identity theft, for which they must spent time attempting to mitigate. (*Id.* ¶¶ 10, 134.) Among other alleged harms, Plaintiffs allege that Plaintiffs and Class Members have suffered or will suffer "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII" and "costs associated with placing freezes on credit reports." (*Id.* ¶ 134.) And Plaintiffs allege that Defendant's offer of a complimentary one-year membership of Experian's® IdentityWorks$^{SM}$ credit monitoring product was inadequate. (*See id.* ¶ 67.)

40.    Plaintiffs seek damages to compensate for out-of-pocket costs to purchase credit monitoring and protect against fraud or theft. Plaintiffs also seek injunctive relief for Defendant to purchase years of credit monitoring for Plaintiffs and all putative class members. (*See id.*, *Prayer for Relief*.)

41.     Three main identity-protection agencies—Equifax,[2] LifeLock,[3] and Experian[4]—advertise monthly rates for credit-monitoring services ranging from $11.99 to $24.99 per person per month.  For example, LifeLock offers a product, titled LifeLock Standard, that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $11.99 per month. Similarly, both Equifax and Experian offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $24.99 per month.

42.     Taking the LifeLock product (at $11.99 per month), which costs $143.88 annually, the costs for providing just one year of credit monitoring to all 12,044 individuals alleged to be in the putative class (as those who were impacted by the Data Incident) would be $1,732,890.72. Yet, Plaintiffs specifically allege that the one-year of credit monitoring already offered was not adequate and seek recovery for risks facing each class member for their lifetimes (Ex. A ¶¶ 10, 67).  These costs would quickly exceed several millions only after a few years. For instance, offering the LifeLock product (at $11.99

---

[2] *See* https://www.equifax.com/personal/ (last visited August 23, 2023).
[3] *See* https://lifelock.norton.com/products?inid=lifelock-lifelock-standard_subnav_products (last visited August 23, 2023).
[4] *See* https://www.experian.com/protection/compare-identity-theft-products/ (last visited August 23, 2023).

per month) for five years to all 12,044 individuals would be $8,664.453.60 (calculated as 60 months times 11.99 per month times 12,044 individuals).

43.    Indeed, in data incident cases involving similar allegations and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e.g., Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKX), 2016 WL 4051265, 2016 U.S. Dist. LEXIS 96805, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.*, No. 1:12- cv-2166, 2013 WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same).    Thus, the Complaint's request for damages for credit monitoring costs alone puts more than $5 million in controversy in this case.

44.    In addition, Plaintiffs alleges that they and putative class members have suffered "lost or diminished value of PII." (*Id.* ¶ 14.)  Plaintiffs allege "personal information can be sold at a price ranging from $40 to $200,

and bank details have a price range of $50 to $200. Experian reports that a stolen credit or debit card number can sell for $5 to $100 on the dark web. Criminals can also purchase access to entire company data breaches from $900 to $4,500." (*Id.* ¶ 58 (footnotes omitted).) Assuming each putative class member can demonstrate such a loss of value, damages could exceed $2.4 million (12,044 individuals times $200 per individual).

45.    Further, Plaintiffs seeks injunctive and declaratory relief requiring untold changes to Defendant's cybersecurity practices, such as to require Defendant "to implement and maintain a comprehensive Information Security Program" and "to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis." (*See id.*, *Prayer for Relief.*) These purported costs must also be considered in determining the amount-in-controversy. *See Fastcase, Inc. v. Lawriter, LLC,* 907 F.3d 1335, 1344 (11th Cir. 2018) (stating the "immediate financial consequences of the litigation" may be considered in calculating the amount in controversy) (citation and emphasis omitted)*; Adams v. Am. Fam. Mut. Ins. Co.,* 981 F. Supp. 2d 837, 847-48 (S.D. Iowa 2013) ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits *that would logically flow* from

16

the granting of the declaratory relief sought by the claimants.  For example, a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000.") (emphasis in original).

46.    Finally, Plaintiff seeks an award of damages on behalf of himself and the putative class for claims for negligence and breach of implied contract. (Ex. A. ¶¶ 110-145.)  For these claims, they seek "actual, consequential, and nominal damages."  (*Id.* at ¶¶ 137, 145.)  The potential to recover damages is also included within the amount-in-controversy.  These claims do not support or suggest the amount in economic or non-economic damages that Plaintiffs seek, especially given that Plaintiffs do not allege they or anyone else in the class suffered fraud, attempted fraud, or theft as a result of the Data Incident. However, based on the minimum compensatory damages for credit monitoring costs calculated above, potential actual and compensatory damages awarded to the class here could also exceed the CAFA amount-in-controversy minimum. Combined with Plaintiffs' other damages, Defendant can demonstrate by a preponderance of the evidence that the CAFA amount-in-controversy threshold has been met.  *See, e.g., Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 632 (4th Cir. 2007) (holding that "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will

17

be less forecloses federal jurisdiction") (quotation omitted); *see also, e.g., Thomas v. FIA Card Servs., Nat'l Assoc.*, No. 5:14-CV-79, 2014 WL 4954389, at \*3 (N.D. W. Va. Oct. 2, 2014) (same; "The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.") (quotation omitted); *Kates v. Chad Franklin Nat'l Auto Sales N. LLC*, No. 08–0384–CV–W–FJG, 2008 WL 3065009, \*2 n.5 (W.D. Mo. July 30, 2008) ("The Court can easily imagine how $900,000 in actual damages, combined with punitive damages and attorney's fees, could exceed the jurisdictional threshold" of CAFA).

47.     Thus, because the case was pled was a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Defendant has properly removed the Circuit Court Action to this Court.

## EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY

48.     "Three enumerated exceptions to the exercise of CAFA jurisdiction exist[]: the 'local controversy' and 'home state controversy' are mandatory exceptions; whereas the 'interests of justice' exception is discretionary." *Brook v. UnitedHealth Group Inc.*, No. 06-cv-12954, 2007 WL 2827808, at \*3 (S.D.N.Y. Sept. 27, 2007) (quoting 28 U.S.C. §§ 1332(d)(2)(4)(A)-(B)); *Hunter v. City of Montgomery, Alabama*, 859 F.3d 1329, 1334-37 (11th Cir. 2017).

18

49.    It is the party "seek[ing] to avail itself of an express statutory exception to federal jurisdiction granted under CAFA…[that] bears the burden of proof with regard to that exception." *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006).  "[O]nce the removing defendants have proved the amount in controversy and the minimal diversity requirement, and thus have established federal court jurisdiction under § 1332(d)(2)," *id.* at 1165, it is the "objecting party [that] bears the burden of proving an express statutory exception," like the local-controversy, home-state, or discretion exception.  *Id* at 1164.  *See also Life of the S. Ins. Co. v. Carzell*, 851 F.3d 1341, 1344 (11th Cir. 2017).

50.    It is well-settled law that for either the mandatory local-controversy or the home-state exception to apply, two-thirds or more of the putative class and the primary defendant must be citizens of the state in which the action was filed.  *See* 28 U.S.C. § 1332(d)(4)(B) & (C); *see also Heretick v. Publix Super Markets, Inc.,* 841 F. Supp. 2d 1247, 1250 (M.D. Fla. 2012) (stating that "CAFA's 'home-state' exception, which like the 'local controversy' exception includes a two-thirds citizenship requirement"); *In re Checking Acct. Overdraft Litig.*, No. 09-MD-02036-JLK, 2012 WL 12877749, at *3 (S.D. Fla. July 25, 2012) ("[B]oth mandatory exceptions of CAFA would require [the party seeking to invoke them] to establish that more than two-thirds of proposed class members are citizens" of the state in which the case was filed).

19

51.    It is well-settled law that "residency does not equate to citizenship." *Smith*, 991 F.3d at 1157.  Instead, residency is merely one prong of the two-pronged test to prove citizenship.  *Id.* (holding that to be a citizen of Florida, the person must "currently reside in Florida and have an intent to remain").  And the other prong—namely, the intent to remain—can only be proved one of two ways.  *Id.* at 1156 ("Class action plaintiffs can prove that two-thirds of the putative class are citizens of a certain state in two ways.").  Citizenship can be established by "limit[ting] the class definition to citizens of a certain state," *id.*, which Plaintiffs have not done here, (*see* Ex. A ¶¶ 94-95 (defining nationwide classes).  Or it can be established by "provid[ing] evidence of the class members' state of residence as well as evidence showing their intent to remain in that state." *Id.* at 1157.  Although the type of evidence necessary to make such a showing varies, the Eleventh Circuit has provided examples of the "forms of evidence" that "relate directly to the parties asserting citizenship," including "property or business ownership, where the plaintiffs pay taxes and are registered to vote, and sworn statements of intent to remain." *Id.*  Here, Plaintiffs point out that Defendant operates gas stations and convenience stores in Florida, Georgia, North Carolina and South Carolina.  (Ex. A ¶ 2.)

52.    Importantly, "'there must ordinarily be at least some [specific] facts in evidence from which the district court may make findings regarding

20

class members' citizenship for purposes of CAFA's local controversy exception.'" *Smith*, 991 F.3d at 1157 (quoting *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013)).  And the Eleventh Circuit has found mailing addresses to be insufficient to establish citizenship.  *Id.* at 1158 (finding that just because "a person lives in a certain geographic area does not establish necessarily that the person is a citizen of that state," which is "particularly true for a state like Florida where citizens of other states may live part of the year in Florida . . . but maintain a permanent residence elsewhere"); *see Floyd v. City of Albany*, No. 1:10-CV-164 (WLS), 2011 WL 13244103, at *6 (M.D. Ga. Sept. 30, 2011) ("Various district courts in the 11th Circuit have held that proof of residence, such as mailing addresses or address records, without additional evidence, are insufficient to establish citizenship."); *In re Checking Acct. Overdraft Litig.*, 2012 WL 12877749, at *5 ("Federal courts may not engage in guesswork in order to decide whether the requisite elements of CAFA exceptions have been met.").

53.    Neither Defendant nor Plaintiffs can demonstrate that CAFA's mandatory local controversy exception or home state exception applies here. With approximately 12,044 putative class members with addresses in 47 states, there simply is no way to know who is a citizen of which state, much less determine that two-thirds or more are citizens of Florida, without speaking directly to each of those approximately 12,044 individuals.    *See*

21

*Smith*, 991 F.3d at 1157 (holding that to prove "citizenship" for the purpose of the local controversy exception, the plaintiff "must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state" and that "[m]ere mental fixing of citizenship is not sufficient. What is in another man's mind must be determined by what he does as well as by what he says").  This is especially true here, where "citizens of other states may live part of the year in [coastal Georgia or nearly Alabama]…, but maintain a permanent residence elsewhere." *Id.* at 1158; *see Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 964 (S.D.N.Y. 2014) (stating that the key question is whether the class member "intended to make New York [their] permanent home").

54.    Thus, absent specific evidence relating to an individual's citizenship, the Court must "exercis[e] jurisdiction over the case." *Smith*, 991 F.3d at 1159 (internal quotations omitted); *see Evans*, 449 F.3d at 1166 (finding that the court had "no way of knowing what percentage of the plaintiff class are Alabama citizens" and, therefore, concluding that "Plaintiffs have failed to prove that more than two-thirds of the plaintiff class are Alabama citizens").

55.    For the same reasons, the discretionary—sometimes referred to as the "interests of justice"—exception to CAFA jurisdiction does not apply here. The discretionary exception is codified under 28 U.S.C. § 1332(d)(3) and provides a district court with the discretion to decline jurisdiction where (1)

22

"greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate" and (2) "the primary defendants are citizens of the State in which the action was originally filed" among other factors.

56.    Just as the Court cannot find that greater than two-thirds of the putative class are citizens of Florida without specific evidence of citizenship, it cannot find that greater than one-third of the putative class are Florida citizens either. *Smith,* 991 F.3d at 1161 (finding that because "the plaintiffs' evidence failed to prove the citizenship of any member of the class," that "same evidence failed to establish that greater than one-third of the class are Florida citizens for purposes of the discretionary exception"); *see also Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,* 485 F.3d 804, 812 (5th Cir. 2007) ("Despite the burden to prove a lesser percentage of class members were citizens of Louisiana, which party bears the burden of proof and the sufficiency of evidence necessary to satisfy the citizenship requirements remains consistent throughout either analysis.").

57.    Moreover, the discretionary exception to CAFA jurisdiction is just that, discretionary.  This exception allows courts the leeway to decline to exercise jurisdiction over cases that are "truly localized controversies" while, at the same time, authorizes courts to retain jurisdiction over cases that should be decided in and are rightfully before the federal court.  This case is clearly the latter.  Plaintiffs allege that Defendant owns and operates "gas stations

and convenience stores in Florida, Georgia, North Carolina and South Carolina." (Ex. A. ¶ 2.) Plaintiffs seek to certify a nationwide class which includes class members from 47 states. And Plaintiffs seek to enforce duties that vary from state to state to protect against criminal cybersecurity events that could originate from anywhere in the world. There are cases that involve "truly localized controversies." This case is just not one of them. *See Preston*, 485 F.3d at 812 ("Congress crafted CAFA to exclude only a narrow category of truly localized controversies, and [the discretionary exception] provides a discretionary vehicle for district courts to ferret out the 'controversy that uniquely affects a particular locality to the exclusion of all others.'") (citation omitted). Thus, the discretionary exception does not apply here.

58.    In sum, none of the CAFA exceptions apply and the Court should retain jurisdiction over the case.

## NOTICE

59.    As required by 28 U.S.C. § 1446(d), Defendant is providing written notice of the filing of this Notice of Removal to Plaintiffs and is filing a copy of this Notice of Removal with the Clerk of the Circuit Court for the Fourth Judicial Circuit in and for Duval County, Florida.

WHEREFORE, Defendant Gate Petroleum Company removes the State Court Action from the Circuit Court for the Fourth Judicial Circuit in and for

24

Duval County, Florida, to the United States District Court for the Middle District of Florida.

Respectfully submitted, this 25th day of August, 2023.

By: */s/ Julie Singer Brady*
Julie Singer Brady
Florida Bar No. 389315
Email:  jsingerbrady@bakerlaw.com
Secondary email: mrios@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, Florida
Telephone: 407.649.4000
Facsimile: 407.841.0168

Christopher A. Wiech
*(Pro Hac Vice Forthcoming)*
Georgia Bar No. 757333
cwiech@bakerlaw.com
Georgia L. Bennett
*(Pro Hac Vice Forthcoming)*
Georgia Bar No. 495910
gbennett@bakerlaw.com
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309-7676
Telephone: 404.946.9814

*Attorneys for Defendant*

4885-7385-7914.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I caused a true and correct copy of the foregoing **Defendant's Notice of Removal** to be electronically filed with the Court using CM/ECF and electronic mail to counsel of record for Plaintiffs, addressed as follows:

Patrick A. Barthle
Ryan D. Maxey
MORGAN & MORGAN COMPLEX
BUSINESS DIVISION
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: 813.223.5505
pbarthley@ForThePeople.com
rmaxey@ForThePeople.com

This 25th day of August, 2023.

*/s/ Julie Singer Brady*
Julie Singer Brady
Florida Bar No. 389315

26